Cabell, J.
The first question is, whether it was proper to charge the appellant with interest on the annual balances in his hands ? The propriety or impropriety of charging an executor with interest, must always depend on the particular circumstances of each, case. And under all the circumstances of this base, I think it was wrong to charge this executor with interest on the annual balances. [Here the judge stated the circumstances.]
But I am also of opinion, that there is an error against the appellee in the decree, in allowing any commissions to the executor; he having failed to settle his accounts according to the requisitions of the statute of 1824-5. The statute is so explicit, that I cannot doubt its construction. It clearly requires, that every executor who had qualified before its enactment, should settle his executorial account within two years after its commencement ; and that on failure to do so, he should forfeit all right to any compensation whatever. The object of the legislature was to force executors to settlements of their transactions, so far as they had gone, in order that all persons interested in the estate might know the state of the assets; and this object is not answered by mere partial payments to legatees. But while I feel myself bound to apply the provision of the statute to this appellant, I must say, that, in my opinion, it has a very harsh operation in his case. He has certainly incurred much trouble, and, the commissioner says, many expenses which he has not charged. He has been unusually prompt in paying to the legatees, what he thought them entitled to, and has never appropriated any of *275 their money to his own uses. Were I not forbidden by the positive terms of the statute, I should allow him a compensation much larger than that to which the court r . . , , below thought him entitled.
Tucker, P.
It is due to the appellant to observe, that there is nothing in the discharge of his official duty to disapprove, except the omission to settle up his accounts according to the provisions of the statute. He has manifested no disposition to withhold the funds of the estate from the persons entitled to them, or to dispose of them for his own uses. On the contrary, he has paid out those funds to the legatees with most unusual promptness, without throwing any obstacles in the way, and without even requiring the refunding bond which he might have demanded by the law. On the small annual balances, I concur with my brother Cabell, that, under the particular circumstances of the case, no interest should be charged.
But the allowance of commissions is objected to: and, while I must say, that I think the objection a most ungracious return for the promptness with which the executor paid over to the legatees the moneys received In 1823, I am compelled to acknowledge its validity, if insisted on. The object of the statute of 1824-5, wa.s to compel executors to settle their accounts before the court of probat, in order to diminish the number of those vexatious suits in equity, which arc a sore evil in the land. It designed to compel prompt settlements, while transactions were yet fresh, and vouchers and evidence yet in existence; and though a settlement between the parties themselves by mutual consent, would take a case out of the statute, yet I think it may he safely affirmed, that partial payments, from time to time, without an exhibition o,nd adjustment of accounts, cannot amount to such a settlement as will take the demand of commissions out of the operation of the sl.a *276 tute. It is, indeed, a hardship, that it should be applied, in the present case, at least to so much of the account as is embraced within the transactions of the first year. But we must obey the law; we cannot repeal it jn(jjrectjy) by construing it away. It was said, that this is a forfeiture of a pre-existing and vested right. Admit it, for the sake of argument; yet it cannot be denied, that the same power which can inflict a pecuniary penalty in the shape of a fine, can take away a right as a punishment for an offence. This is all that is here done. If the legislature had denounced' against executors a penalty of ten per cent, on the amount of their receipts, to be paid to the legatees, who could gainsay the act? Now, it is not perceived, that the case thus put is stronger than that of taking away a vested right to a commission to be paid out of the estate. There is nothing then in the statute, beyond the power of the legislature. It was said, -too, that the plaintiff here, calls upon equity to enforce a forfeiture, which is not within its province. As a general proposition, it is certainly true, that equity cannot enforce a forfeiture. But as that court alone has the jurisdiction to settle finally the accounts of executors, and to decree to legatees and distributees their portions of a decedent’s estate, the law would be a dead letter, if it was not a law for the courts of equity, which they are bound to follow. The statute declares, that upon failure to account, no compensation shall be allowed to the executor. How, then, is the court of equity to settle the account, and decree the balance ? It must* either reject the compensation, and thus seem to enforce a forfeiture, or it must directly disobey the law. The latter it cannot do. If, therefore, the provision of the law was to be considered as creating a forfeiture, instead of being as it is a mere regulation for settling an account, I should still think we were bound to obey it. But, in truth, it is but a regulation for settling an account. Before the statute of *277 May 1730, ch. 8. § 21. 4 Hen. stat. at large, p. 287. executors received no compensation, no commission. In 'England, they receive no commissions. Our statute provides, that they shall be allowed such compensation for their personal trouble as the court shall judge reasonable ; 1 Rev. Code, ch. 104. § 59. p. 389. No fixed compensation is established by law. The matter is within the discretion of the court, and until that discretion has been exercised, there is no vested interest in the executor. He cannot say he has a title to any particular sum; and though I a,m aware of no case in which the court had altogether refused commissions to the executor, because of his misconduct, yet I cannot doubt, that his gross misbehaviour would be good cause for reducing them. The right, then, is not a vested right. The same power which authorized the allowance, now forbids it to be made, where the executor has not settled his accounts. The courts of equity, then, in looking for their authority to one of these laws, surely cannot disregard the limit upon that authority imposed by the other.
Upon the whole, I am of opinion, that the decree should be reversed, and the canse sent back, with directions, that the accounts be recommitted to the commissioner, with instructions to disallow interest except from the close of the transactions, on the one hand, or commissions on the other. The costs must be decreed to the appellee, as the party substantially prevailing.
Carr, J. concurred.
.Decree reversed, with costs to the appellee, as the party substantially prevailing; and cause remanded to the circuit superiour court, with directions to recommit the accounts to the commissioner, with instructions not to allow commissions to the executor on the one hand, and on the other, not to charge him with interest, except from the close of the transactions.